IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY NEWCOMB, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | No. 13 C 7831 <br><br> Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

Amy Newcomb seeks an order reversing and remanding the Commissioner's decision denying her claim for disability benefits (doc. # 18), and the Commissioner has filed a motion asking the Court to affirm (doc. # 22). For the reasons that follow, we grant Ms. Newcomb's request to remand and deny the Commissioner's motion to affirm.

### I.

In applying the familiar five-step sequential inquiry for determining disability, *see* 20 C.F.R. § 404.1520(a)(4)(i)-(v), the ALJ found at Step 2 that from Ms. Newcomb's alleged onset date of September 1, 2008, through her date last insured of June 30, 2010, Ms. Newcomb suffered from the severe impairments of narcolepsy, anemia and fibromyalgia (R. 20). The ALJ reviewed the Paragraph B criteria as to Ms. Newcomb's alleged depressive disorder and found that she had no limitations in activities of daily living and social functioning, and only mild limitation in concentration, persistence or pace as related to her mental impairment, as well as no episodes of decompensation (R. 21). Rather, the ALJ stated that Ms. Newcomb's difficulties in these areas resulted from her narcolepsy condition (*Id.*). Thus, the ALJ found that Ms.

---

[1]On November 21, 2013, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. ## 6, 8).

Newcomb's alleged depressive disorder was not a severe impairment (*Id.*). The ALJ then determined, at Step 3, that Ms. Newcomb's impairments did not meet or medically equal a Listing (R. 22). However, in so doing, the ALJ only specifically addressed Ms. Newcomb's fibromyalgia, for which the ALJ noted there was a lack of evidence of ineffective ambulation and numerous unremarkable diagnostic and physical examinations in the record (R. 22). The ALJ's Step 3 discussion omitted any mention of Ms. Newcomb's other severe and non-severe impairments.

The ALJ then set out to determine Ms. Newcomb's residual functional capacity ("RFC"). The ALJ reviewed Ms. Newcomb's allegations that she has significant difficulty performing general tasks due to experiencing confusion, pain, lack of concentration and "brain fog" twice per week (R. 23). In addition, the ALJ noted that Ms. Newcomb testified that she suffers from ten to fifteen migraine headaches per month, some of which preclude significant activity for "numerous days 2-3 times per month" (*Id.*). At her hearing on April 23, 2012, Ms. Newcomb testified that she stopped working in 2008 because her lethargy and brain fog made it difficult for her to concentrate and remember things, and it took her all afternoon to do a thirty minute project (R. 48-49, 51). Ms. Newcomb takes Cymbalta, which helps address her brain fog and depression, as well as her fibromyalgia (R. 58). Ms. Newcomb also testified that while she gets injections (Imitrex) to help with her migraines, if she does not catch the migraine in time she becomes nauseated and vomits (R. 53-55).

The ALJ found Ms. Newcomb's statements concerning the intensity, persistence and limiting effects of her symptoms "not entirely consistent with the overall record" (R. 24). He stated that he had given Ms. Newcomb's hearing testimony "the greatest allowable

2

consideration," but that he could not rely "solely" on the testimony because "it must necessarily be supported by objective, clinical medical evidence" (*Id.*).

The ALJ noted that in October 2009, Ms. Newcomb was diagnosed with narcolepsy and anemia, and she has a history of daytime fatigue resulting from recurrent cycles of hypersomnia (excessive sleepiness) alternating with insomnia (sleeplessness) (R. 24-25). Dr. Philip Leung, consulting for a sleep study, opined that Ms. Newcomb's sleep problems were mostly related to psychiatric issues, including depression and anxiety (R. 267-68). After a sleep study in December 2012, Dr. Leung opined that the study was compatible with narcolepsy and recommended treatment for that as well as hypothyroidism, depression and chronic pain (R. 281). However, the ALJ found that no psychiatric issues were established or identified (R. 24).

In addition, the ALJ described Ms. Newcomb's treatment prior to the date last insured as "routine and conservative in nature" (R. 25). The ALJ noted that Ms. Newcomb's mental health treatment prior to her date last insured was minimal and not well-documented in the record, and though her primary physician prescribed Cymbalta (which may be used to treat depressive and anxiety disorders), it was primarily used to treat her fibromyalgia (*Id.*). In addition, while Ms. Newcomb was hospitalized for two days in October 2009 due to altered mental status and hallucinations stemming from lack of sleep for three days, neurological testing was normal and she had only minimal signs of impaired thought process or notable depression (R. 24, 309, 320).

The ALJ also reviewed the progress notes of Ms. Newcomb's treating physician, Dr. Abhinav Singla, whom she saw regularly. In March 2009, Dr. Singla noted that Ms. Newcomb was depressed and spent most of her days watching television and sleeping, and he prescribed Wellbutrin (R. 259-60). The ALJ noted that Ms. Newcomb's complaints of insomnia, fatigue, difficulty concentrating, and fibromyalgia joint pain increased throughout 2009, but that on June

3

22, 2010, Ms. Newcomb reported "a 'tremendous' increase in energy due to medication titration," and her treating physician thought she looked "great" (R. 25). Medical notes from August 2010 and Ms. Newcomb's hearing testimony confirmed that she was doing well with her medications (R. 25).

In determining Ms. Newcomb's RFC, the ALJ largely adopted the physical RFC opinion of Dr. Ashok Jilhewar, who reviewed the medical record in April 2012 at the request of the Social Security Administration (R. 390). The ALJ, like Dr. Jilhewar, found that Ms. Newcomb had an RFC that permitted her to perform sedentary work, except that she could: stand or walk for thirty minutes at a time; frequently operate foot controls, reach in all directions, handle, finger, feel, push/pull and climb ramps; occasionally balance, stoop, kneel, crouch, crawl, climb stairs and operate a motor vehicle; and frequently tolerate exposure to unprotected heights, dangerous moving machinery, humidity and various pulmonary irritants (R. 22). In addition, due to her daytime fatigue, the ALJ further limited Ms. Newcomb to "understanding and remembering simple instructions to perform simple, routine, and repetitive tasks in work environments that are not fast-paced and that do not require a production rate race, as on an assembly line" (R. 22-23). The ALJ determined that this last limitation "adequately accommodated" Ms. Newcomb's mild limitation in concentration, persistence or pace resulting from her depressive disorder (R. 24).

The ALJ found that "[t]here are no opinions in the records from any treating medical sources," but that the "reports from numerous examining and treating physicians" do not support greater limitations than those assessed in the RFC (R. 26).[2] He gave "minimal weight" to a December 2010 non-examining state agency assessment which found, with no discussion, no

---

[2] Since the ALJ made reference to *reports* from treating physicians, perhaps the ALJ meant (although he does not say) that there were no *opinions* detailing any specific limitations Ms. Newcomb experiences from her conditions.

4

medically determinable physical impairments other than non-severe hypertension (*Id.*, citing R. 369-71). The record also contains a Psychiatric Review Technique Form ("PRTF") from December 2010, but that form's mental RFC questions were left blank, and the non-examining state agency physician checked the box indicating that there was "insufficient evidence" to determine whether Ms. Newcomb had a medically determinable mental impairment (R. 372-85).[3]

## II.

"We review the ALJ's decision deferentially only to determine if it is supported by substantial evidence, which we have described as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (internal citations and quotations omitted). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review. A decision that lacks adequate discussion of the issues will be remanded." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (internal citations omitted).

We agree with Ms. Newcomb that the ALJ's opinion was deficient in (1) its failure to adequately address Ms. Newcomb's alleged depressive disorder and her migraine headaches, and (2) its credibility discussion. We address each issue in turn.

---

[3] Ms. Newcomb also cites to medical evidence in the record dated more than a year after her date last insured of June 30, 2010, including notes from a treating psychiatrist from September 2011 through March 2012 (doc. # 18: Pl.'s Br. at 3, 10-11). However, Ms. Newcomb does not contend that the Appeals Council erred in denying her request for review or that this was new and material evidence the Commissioner should have considered. As such, it is not relevant to our discussion here.

5

A.

Ms. Newcomb argues that the ALJ erred by ignoring evidence of her mental impairment and failing to order an evaluation of her mental RFC after the state agency doctor determined, without analysis, that there was insufficient evidence to determine if Ms. Newcomb suffered from a medically determinable mental impairment (doc. # 27: Pl.'s Reply at 2-5).

"ALJs have a duty to develop a full and fair record and must order supplemental testing when the gap in the medical record is significant and prejudicial." *Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014). "Although an applicant for disability benefits bears the burden of proving that she is disabled, an ALJ . . . 'has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.'" *Richards v. Astrue*, 370 F. App'x 727, 731 (7th Cir. 2010) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(3) ("[B]efore we make a determination that you are not disabled, we are responsible for developing your complete medical history. . ."). An ALJ may order a consultative examination when "the evidence as a whole is insufficient to support a determination or decision on [the] claim." 20 C.F.R. § 416.919a(b).

In *Richards*, the Seventh Circuit held that the ALJ failed to build the necessary logical bridge from the evidence to the ALJ's conclusion that the claimant was only mildly impaired in three Paragraph B areas because there was no "expert foundation" for those ratings. *Richards*, 370 F. App'x at 731. The claimant's psychiatrist had diagnosed the claimant with depression, but neither he nor any other mental health professional had ever opined on how those impairments affected the claimant's functional capacity for employment. *Id.* Similarly, in the instant case, Dr. Singla and Dr. Leung diagnosed Ms. Newcomb with depression but did not complete an RFC evaluation of Ms. Newcomb's mental impairments, or otherwise address any functional

6

limitations Ms. Newcomb may have as a result of depression. Moreover, the state agency physician filling out the PRTF declined to make an assessment due to the lack of documentary evidence. While "there is no absolute requirement that an ALJ remand a case simply because a PRTF was not completed," like in *Richards*, in this case "the need for additional evidence about the limiting effects of [the claimant's] depression and anxiety was apparent." *Id*. Here, as in *Richards*, the ALJ came to his Paragraph B determinations without any corresponding medical evidence and thus did not build a logical bridge between the evidence and his conclusion as to Ms. Newcomb's mental RFC.[4]

Plaintiff also argues that the ALJ ignored treatment notes from 2009 that her depression interfered with her ability to do household chores and function socially (Pl.'s Reply at 5). We agree. Rather than mentioning the 2009 appointments where Ms. Newcomb's depression was prominent, the ALJ specified one date in June 2010 when Ms. Newcomb was feeling better and looking well. The Seventh Circuit has cautioned that this kind of "sound-bite" approach to record evaluation -- identifying pieces of evidence in the record that support the ALJ's conclusion that the claimant is not disabled, but ignoring related evidence that undermines that conclusion -- is an "impermissible methodology for evaluating the evidence." *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014). Moreover, the ALJ failed to consider the fact that "symptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *see also Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir.

---

[4]We also are concerned with the lack of supporting analysis for the ALJ's statement that Ms. Newcomb's functional limitations in the Paragraph B areas resulted from her narcolepsy condition rather than any mental impairment (R. 21). The ALJ was "playing doctor . . . which an administrative law judge is not permitted to do." *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014). In addition, the Seventh Circuit has expressed concern that an ALJ's statement that "the record demonstrates that [the claimant's] limitations in this area were related to physical pain rather than mental problems" may indicate that the ALJ eliminated the mental limitations from consideration of whether the claimant was disabled, which the ALJ cannot do, because this would be "a failure to consider the combined effects of her ailments." *Williams v. Colvin*, 757 F.3d 610, 614 (7th Cir. 2014).

7

2010) (stating that mental illness may characterized by "good days and bad days," with "waxing and waning symptoms").

In addition, Ms. Newcomb correctly points out that the ALJ erred by failing to determine how her migraine headaches affect her residual functional capacity (Pl.'s Reply at 7-8). The ALJ acknowledged plaintiff's testimony that she suffered ten to fifteen migraines per month, some of which precluded significant activity numerous days each month. However, the ALJ did not determine whether Ms. Newcomb's migraine headaches were a medically determinable impairment – severe or non-severe – that the ALJ considered in his RFC calculation, as the ALJ was required to do. *See Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal"); *see also Yurt*, 758 F.3d at 860 ("The fact that the headaches standing alone were not disabling is not grounds for the ALJ to ignore them entirely -- it is their impact in combination with [the claimant's] other impairments that may be critical to his claim").

The Commissioner argues that the ALJ's acknowledgement of Ms. Newcomb's history of migraine headaches and his statement that he considered the notes of Dr. Singla (Ms. Newcomb's treater) shows that the ALJ gave due consideration to this condition (doc. # 23: Def.'s Mem. in Supp. of Mot. for Summ. J. at 9-10). We disagree; merely reciting Ms. Newcomb's testimony that she suffers migraine headaches does not shed light on why the ALJ found the headaches would not require limitations greater than the RFC he fashioned. While the Commissioner offers her own reasons for why that might be so, those reasons were not offered by the ALJ and cannot be used to defend the ALJ's decision. *See Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) (cautioning the government to remember the well-settled law that "*Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed.

8

1995 (1947) requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself") (internal citations and quotations omitted)).

Nor can we conclude that this shortcoming is harmless. According to Ms. Newcomb, these migraines preclude her from engaging in significant activity two to three times a month. The vocational expert testified that there would be no jobs available for an individual who missed two or more days of work per month (R. 85). The ALJ's failure to address the impact of Ms. Newcomb's migraine headaches on her ability to work -- both standing alone and in conjunction with her other conditions -- thus requires remand.

## B.

Finally, in explaining his conclusion that the alleged severity of Ms. Newcomb's symptoms was "not entirely consistent with the overall record," the ALJ stated that he is "unable to rely solely on testimony provided at the hearing, as it must necessarily be supported by objective, clinical evidence" (R. 24). We are concerned that this explanation may reflect that the ALJ applied an incorrect legal standard. As the Seventh Circuit has explained, "a claimant's testimony about her symptoms 'may not be disregarded solely because they are not substantiated by objective medical evidence.'" *Thomas v. Colvin*, 534 F. App'x 546, 552 (7th Cir. 2013) (quoting SSR 96-7p, 1996 WL 374186, at *1); *see also Williams v. Colvin*, 757 F.3d 610, 615 (7th Cir. 2014) (explaining that "[t]here's nothing unusual about a person's having disabling symptoms that, though real, the doctors cannot explain"). On remand, the ALJ must make clear that he has not disregarded some aspect of Ms. Newcomb's testimony solely because he did not find objective medical evidence to support it. If the ALJ concludes Ms. Newcomb's testimony deserves diminished weight, he must go further in explaining his reasons for that conclusion.

9

## CONCLUSION

For the reasons stated above, we grant Ms. Newcomb's request for remand the ALJ's decision (doc. # 18), and we deny the Commissioner's motion to affirm (doc. # 22). The case is remanded for further proceedings consistent with this opinion. The case is terminated.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

DATE: January 21, 2015